**In re the Marriage of William L. DOVE, Respondent,**

v.

**Ann E. DOVE, Appellant.**

**No. WD 40917.**

Missouri Court of Appeals, Western District.

June 27, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

Michael C. McIntosh, Independence, for appellant.

R. Michael Poland, Cameron, for respondent.

Before SHANGLER, P.J., and LOWENSTEIN and ULRICH, JJ.

LOWENSTEIN, Judge.

Ann Dove (wife) appeals from a decree of dissolution. She alleges error in (1) the division and designation of marital property, non-marital property and (2) the failure to award attorney's fees and costs to her from William Dove (husband).

■ The standard of appellate review in a court-tried case requires this court to affirm the judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

> Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony ... The judgment is to be affirmed under any reasonable theory supported by the evidence ... Further, the appellate court must accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard the contradictory evidence ... Deference is accorded the trial judge even if there is evidence which might support a different conclusion.

*Ware v. Ware,* 647 S.W.2d 582, 583–84 (Mo.App.1983) (*citations omitted*).

■ The wife contends that the trial court made a wholly disproportionate division of property. She claims that she received only 4—9.5% of the marital estate. The 4% figure would represent the amount the wife received if the trial court incorrectly decided that $8,039.81 obtained by the wife from real estate commissions was marital property subject to distribution. The husband claims that the wife received closer to 20% of the marital estate, because the court also took into consideration loans made by the wife to her daughter and son-in-law, as well as unaccounted for marital funds used by the wife.

The trial court found the following items to be marital property and divided and determined their values as follows:

| Husband | Value | Wife | Value |
|---|---|---|---|
| Cameron Residence | $ 67,500.00 | First Nat'l Bank Gladstone Acct. | $ 8,039.81 |
| Goods, furnishing and antique inventory located at Cameron Residence | 34,000.00 | Metro North State Bank Acct. | 4,165.48 |
| Home Savings Acct. | 19,714.88 | Home Savings Acct. | 509.60 |
| Mo. Fed. Sav. Bank | 2,800.00 | Oldsmobile Toronado Automobile | 350.00 |
| Ford Pickup Truck | 350.00 | | $ |
| | $ 124,364.88 | | $ 13,064.89 |

In addition, the wife was awarded some $1,000.00 in non-marital property. The trial court required the husband to pay $1,223.04 worth of marital debts. Each party was to pay his respective attorneys' fees and one-half the costs.

Under Section 452.330.1, RSMo 1986, the statute applicable to this point, the court is to consider these relevant factors in dividing the marital property:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home

or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage.

The burden rests on the appellant to establish error in the court's judgment. *Naeger v. Naeger,* 542 S.W.2d 344, 346 (Mo.App.1976).

Although findings were not requested, the relevant facts are as follows:

The couple married in 1980. At that time the husband was 61 and the wife was 38 years old. He had a prior injury which qualified him for social security disability payments prior to his retirement. He had an eighth grade education, while she had received a high school diploma and had completed three years of college. Prior to marriage the wife was an interior designer and the husband ran an antique business. The husband brought into the marriage a residence valued at $60,000.00 and a commercial building which he valued at $45,000. He also brought into the marriage $1,000 to $2,000 in cash and some contracting equipment. At trial the wife claimed to have brought to the marriage $35,000 to $40,000 worth of household furnishings and business inventory and art and jewelry valued at $6,000 to $7,000. Yet, on September 15, 1980, only weeks prior to the wedding the wife signed a bankruptcy petition which showed no cash on hand, $520.00 worth of household goods, supplies and furnishings, and $95.00 worth of business equipment. The total value of all property listed by the wife was $1,515.00.

After the marriage, the wife moved into the husband's residence with her two daughters. In 1984, the wife received a real estate license. Using her skills, she sold the commercial real estate which the husband brought into the marriage for $42,904.79. She also sold the family home for $49,847.42. She did not take a commission on either sale. From the proceeds of those sales, the couple purchased a home in Cameron, Missouri for $57,000. The couple placed the remainder of the money in bank accounts and used some of it to purchase certificates of deposit.

During the marriage, the wife lent her children (including a son-in-law) a total of $11,500 which had never been repaid. The wife also testified that on advice of counsel she withdrew roughly $14,000 from the joint bank accounts. None of the $14,000 was available at the time of trial. The husband also testified that during the marriage he learned that his wife had secretly established a separate bank account with over $8,000 in it. The wife stated that she placed her real estate commission checks in that account upon her attorney's advice. For his part, after the separation the husband sold $2,000 to $3,000 worth of antiques in the "normal course of business." The wife received none of the proceeds from those sales. The inventory in the store was essentially the same at the time of separation as it was at the time the couple married. There was evidence the wife worked to better the antique store and the various residences owned by the couple. The husband "bawled out" the wife for seemingly insignificant matters, but that conduct obviously did not weigh much in the court's decision.

Under these particular facts, the court, after noting the wide disparity in the distribution of property, cannot say there was an abuse of discretion by Judge Lewis. The division should be just and equitable taking into account the statutory factors. *Russell v. Russell,* 740 S.W.2d 672, 674 (Mo.App.1987). As often stated, a division of marital property doesn't have to be even, it just has to be fair. *Ware, supra,* 647 S.W.2d at 584. This court has upheld division's of 72% to 28% and a division of 88% to 12%. *See, e.g., Arp v. Arp,* 572 S.W.2d 232 (Mo.App.1978); *In re Marriage of Burris,* 557 S.W.2d 917 (Mo.App.1977).

In *Mika v. Mika,* 728 S.W.2d 280, 283 (Mo.App.1987), the Eastern District affirmed an 84% to 16% split saying "disproportionate divisions are routinely affirmed." Here, the husband's age, education, physical condition, and the property

he brought to the marriage, *Featherston v. Featherston,* 710 S.W.2d 288, 291 (Mo.App. 1986), justify the judgment. *Milde v. Milde,* 723 S.W.2d 471, 474 (Mo.App.1987).

 The wife's second point is the trial court inappropriately treated the $8,039.18 obtained by her from real estate commissions as a marital asset. She claims to have spent all the money on living expenses. The wife citing *Fornachon v. Fornachon,* 748 S.W.2d 705, 708 (Mo.App. 1988), claims that because the money was used for a living expenses, it was improper for the court to treat the money the way it did. This court must disagree.

Although the appellant cites an appropriate rule of law, she did not offer proof showing the funds were actually used for her living expenses. In *Fornachon, supra,* such a showing was made. The trial court was free to disbelieve the wife's testimony or "vague accounting" as described in *Hogrebe v. Hogrebe,* 727 S.W.2d 193, 197 (Mo.App.1987), that she used the $8,000 for living expense. In fact, some weight may have been given to the wife's testimony on cross-examination that she withdrew over $14,000 from several joint bank accounts held by the couple and that she spent all that money for living expenses. This point of error is denied.

 The wife's third point is that the court should have offset the value of 2,000 to 3,000 dollar's worth of antiques (marital property) that the husband admitted he sold during the period of separation. The husband testified he used part of the money to purchase additional inventory for the antique store and that he maintained the store's inventory at the same level since the parties' separation. Obviously, the trial judge was free to and did believe that testimony. The point is denied.

Finally, the wife claims error in that the trial court did not award her attorney's fees or expenses. The court has broad discretion in awarding attorney's fees. *Franke v. Franke,* 747 S.W.2d 202 (Mo. App.1988). Viewing the record, this court cannot say that the trial court abused its discretion in not awarding attorney's fees or costs to the wife.

The judgment is affirmed.