Dennis Wayne **LEE**, Respondent,

v.

Darla Wilene **LEE**, Appellant.

No. WD 54098.

Missouri Court of Appeals, Western District.

Jan. 20, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1998.

Brent Turner, Chillicothe, for Appellant.

Gordon E. Cox, Chillicothe, for Respondent.

Before ELLIS, P.J., and HOWARD and RIEDERER, JJ.

HOWARD, Judge.

This is an appeal from the circuit court's judgment in favor of Respondent on his petition for dissolution of marriage as to custody, visitation, and support of the minor child born of the marriage, and property division, and against Appellant on her counter petition for custody, visitation, support of the minor child born of the marriage, property division, and attorney fees.

Appellant raises four points on appeal. She contends the trial court erred by 1) failing to sustain her pre-trial motion in limine to exclude all evidence and testimony obtained through illegal means; 2) ordering joint custody and designating Respondent as the primary physical custodian of the minor child; 3) failing to equitably divide the marital property and debts of the parties; 4) failing to require that Respondent pay Appellant's attorney fees.

## Facts

Appellant Darla Wilene Lee and Respondent Dennis Wayne Lee were married in 1986. One child, Jessie Alexandra Lee, was born of the marriage on July 23, 1991. The parties separated in 1995. On October 31, 1995, Respondent filed his Petition for Dissolution of Marriage, requesting sole legal custody of Jessie. Appellant, in her Answer and Counter Petition for Dissolution of Marriage, also requested sole custody of Jessie. After trial, the court ordered joint legal custody of Jessie, and placed primary physical custody with Respondent, with visitation for Appellant. The court also divided the marital property and ordered that the parties pay their own attorney fees.

## Standard of Review

We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's determination of credibility, viewing the evidence and inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Price v. Price*, 921 S.W.2d 668, 671 (Mo.App. W.D.1996); Rule 73.01(c)(2). We defer to the trial court even if the evidence could support a different conclusion. *Browning v. Browning*, 947 S.W.2d 106, 108 (Mo.App. W.D.1997).

## Point I

Appellant's first point on appeal is that the trial court erred in failing to sustain her pre-trial motion in limine to exclude all evidence and testimony obtained through illegal means. Before the commencement of testimony in this case, Appellant filed her motion in limine. After consideration of the respective arguments of counsel, the trial court allowed the introduction into evidence of Respondent's Exhibit 12, a video tape taken by Respondent from the top of the elementary school across the street from Appellant's apartment. The video tape was taken through the window of Appellant's apartment. The tape depicted sexual activity between Appellant and another man. The trial court also allowed testimony regarding telephone conversations between Appellant and another man, overheard by Respondent through the means of a scanner that could be programmed to listen to cellular phone conversations. During the conversations in question, at least one of the parties was using a regular wire phone, and usually the other party was using a cellular phone.

## I. The Video Tape

We first address Appellant's claim that the video tape was illegally obtained. Appellant claims that by making the video tape, Respondent committed criminal tres-

pass and an invasion of privacy pursuant to § 565.253 RSMo 1996.[1] Appellant argues that because the tape was illegally obtained, the court erred in admitting the tape into evidence. We find it unnecessary to decide whether the tape was illegally made because in civil cases, the manner in which evidence is obtained is irrelevant to the issue of admissibility. *Matter of Moore*, 885 S.W.2d 722, 727 (Mo.App. W.D.1994). Even evidence obtained fraudulently, wrongfully, or illegally is admissible. *Id.; see also State ex inf. Peach v. Boykins*, 779 S.W.2d 236, 237 (Mo. banc 1989) (evidence obtained illegally is not subject to the exclusionary rule, except in criminal cases). Therefore, the video tape was admissible regardless of whether it was obtained in violation of § 565.253.

## II. The Phone Conversations

We next address whether the interception of the phone conversations was legal. Appellant contends that by admitting evidence of the phone conversations into evidence, the court violated Missouri and federal law. The legality of the phone conversation tapes is more relevant than the legality of the video tape because the statutes that pertain to wire communications contain their own exclusionary rules, providing that evidence of illegally obtained wire communications may not be admitted into evidence.[2]

Appellant claims the court's admission of the tapes into evidence was in conflict with § 542.418[3] and § 542.420[4] of the Missouri Wiretap Law.[5] Section 542.402 of the Missouri Wiretap Law provides, in pertinent part:

Except as otherwise specifically provided in sections 542.400 to 542.424, a person is guilty of a class D felony and upon conviction shall be punished as provided by law, if such person ... knowingly intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire communication....

 No Missouri court has addressed the issue of whether a cellular phone conversation falls within the purview of the Missouri Wiretap Law. However, we are persuaded that the phone conversations in this case are protected by the Missouri Wiretap Law because the plain language of the Missouri law protects conversations between a person using a cellular phone and a person using a regular wire phone. Section 542.400(12) defines "wire communication" as follows:

[A]ny communication made *in whole or in part* through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception including the use of such connection in a switching station furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of local, state or interstate communications. (Emphasis added.)

The statute provides that so long as the communication was made partially through a regular wire telephone, it is protected under the statute. We find that the conversations were intercepted in violation of § 542.402 and admitted into evidence in violation of §§ 542.418 and 542.420.

---

1. Section 565.253 provides, in relevant part, that "[a] person commits the crime of invasion of privacy if he knowingly views, photographs or films another person, without that person's knowledge and consent, while the person being viewed, photographed or filmed is in a place where he would have a reasonable expectation of privacy."

2. *See* § 542.420 RSMo and 18 U.S.C. § 2515.

3. All statutory references are to RSMo 1994, unless otherwise indicated.
 Section 542.418 provides, in relevant part, that "[t]he contents of any wire communication or evidence derived therefrom shall not be re-

ceived in evidence or otherwise disclosed in any civil or administrative proceeding, except in civil actions brought pursuant to this section."

4. Section 542.420 provides:
 Whenever any wire communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court ... if the disclosure of that information would be in violation of sections 542.400 to 542.424.

5. § 542.400 through § 542.422.

We next address whether the admission of the testimony concerning the tapes was reversible error. The trial court in a court-tried case is allowed wide latitude in the admission of evidence because it is presumed that it will not give weight to evidence that is incompetent. *Estate of Markley*, 922 S.W.2d 87, 91 (Mo.App. W.D. 1996). Because of this presumption, it is difficult to base reversible error on the erroneous admission of evidence in a court-tried case. *Id.* This court presumes on review that inadmissible evidence is not prejudicial unless it is clear the trial court relied on that evidence in arriving at its findings of fact and conclusions of law. *State v. Darnell*, 858 S.W.2d 739, 747 (Mo.App. W.D.1993). In this case, while the admission of the testimony concerning the tapes was erroneous, it is not clear that the trial court relied on the testimony in arriving at its findings of fact and conclusions of law. In addition, substantial evidence other than the testimony about the phone conversations supported the trial court's judgment. Therefore, the admission of the testimony was harmless error.

Point I is denied.

## Point II

Appellant's second point on appeal is that the trial court erred in ordering joint custody and designating Respondent as the primary physical custodian of the minor child. Appellant contends the court's finding was against the weight of the evidence, based on a misapplication of the facts and law, and not in the best interest of the minor child.

The trial court is presumed to have considered all the evidence and awarded custody in the best interest of the child. *Leone v. Leone*, 917 S.W.2d 608, 613 (Mo.App. W.D. 1996). An award of child custody should not be disturbed unless the trial court's ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable and the appellate court is firmly convinced that the welfare of the child requires some other disposition. *Hankins v. Hankins*, 920 S.W.2d 182, 187 (Mo.App. W.D.1996). Accordingly, the determination of the trial court in child custody proceedings is given greater deference than in any other type of case. *Id.*

Section 452.375.4 establishes a preference for joint custody. *Leone*, 917 S.W.2d at 614. However, joint legal custody is appropriate only where parents demonstrate the willingness and ability to share the rights and responsibilities of raising their children. *Id.* Appellant testified that she would have no problem with having joint legal custody of the minor child with Respondent. Although the parties have expressed differences, we defer to the trial court's determination that the parties are willing and able to share the rights and responsibilities of raising their child. In this case, where there was evidence of misconduct by both parties, we will not question the trial court's determination of what custody arrangement is in the child's best interest.

Point II is denied.

## Point III

Appellant's third point on appeal is that the trial court erred by failing to equitably divide the marital property and debts of the parties. The trial court has considerable discretion in dividing marital property. *Lenger v. Lenger*, 939 S.W.2d 11, 14 (Mo.App. W.D.1997). A division of property by the trial court will be affirmed if it is not unduly weighted in favor of one party so as to constitute an abuse of discretion. *Id.* The person seeking to modify the trial court's division of property has the burden of showing the trial court abused its discretion. *Id.*

Section 452.330 requires the trial court to divide the marital property in a just manner, but a just division is not necessarily an equal one. *Woolsey v. Woolsey*, 904 S.W.2d 95, 100 (Mo.App. E.D.1995). The fact that one party is awarded a higher percentage of marital assets is not a per se abuse of discretion. *Lenger*, 939 S.W.2d at 14. Disproportionate divisions of marital property are routinely affirmed. *In re Marriage of Smith*, 892 S.W.2d 767, 769 (Mo.App. S.D.1995).

Appellant claims that the trial court intended to make an equal property division, and the property division the court made is not consistent with that intent. However, in its findings of facts, the trial court stated that the marital property and debts should

be "justly apportioned between the parties." *Monsees v. Monsees*, 908 S.W.2d 812, 815 (Mo.App. W.D.1995). Nowhere does the court suggest that it intended to make an equal property division. Our review of the trial court's judgment indicates that the property division reflects the court's intent.

■ Appellant further claims the trial court made a mistake in calculating the value of the marital property. By Appellant's own calculations, the error resulted in a $656 miscalculation, the correction of which would result in an equal property division. Even assuming the trial court erred in its calculation and that it intended to make an equal property division, we find no reason to disturb the trial court's property division for such a small miscalculation. *See Franke v. Franke*, 913 S.W.2d 846, 851 (Mo.App. E.D. 1995).

Point III is denied.

### Point IV

■ Appellant's fourth point on appeal is that the trial court erred by failing to require that Respondent pay Appellant's attorney fees because based on the evidence presented at trial, Respondent had sufficient financial resources to pay the fees. The trial court is afforded considerable discretion in determining whether to award attorney fees. *Leone*, 917 S.W.2d at 616. To justify a reversal of a trial court's decision not to award Appellant attorney fees, Appellant must show that the trial court abused its discretion. *Id.* An abuse of discretion is established only when the trial court's decision is so "clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* (quoting *Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App. W.D.1992)). Appellant has failed to show that the trial court abused its discretion by ordering that she pay her own attorney fees.

Point IV is denied.

The judgment of the trial court is affirmed.

All concur.